UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:13-CV-00132-GNS-HBB

JAMES H. COITRONE                                                                                    PLAINTIFF

V.

BOBBY D. MURRAY et al.                                                                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 37). In addition, the parties have moved to exclude each other's expert witnesses. (Pl.'s Mot. in Limine, DN 34; Defs.' Mot. in Limine, DN 36). The motions have been completely briefed and are now ripe for a decision. For the reasons outlined below, Defendants' Motion for Summary Judgment (DN 37) is **GRANTED**. Both motions in limine (DN 34, 36) are **DENIED AS MOOT**.

**I.      STATEMENT OF FACTS AND CLAIMS**

On August 19, 2012, Plaintiff James H. Coitrone ("Coitrone") resided with his girlfriend, Shasta McCollum ("McCollum"). (Compl. ¶ 6, DN 1; Coitrone Dep. 16:19-22, 48:6-17, Feb. 24, 2014, DN 37-2). That morning Coitrone had planned to take McCollum to church in Bowling Green on his motorcycle. (Coitrone Dep. 49:18-50:5). En route they traveled down a major thoroughfare until they reached a stop light by a Wal-Mart store. Trooper Kevin Mayfield pulled up in his police cruiser behind Coitrone and ran the license plate on the motorcycle, which revealed outstanding warrants for Coitrone "[f]or kidnapping, sodomy, rape, [and] bail jumping." (Coomes Dep. 35:11-19; Coitrone Dep. 52:10-19). After they proceeded through the intersection

Mayfield activated his blue lights but Coitrone did not stop, instead leading law enforcement on a 6.4-mile chase.[1] (Coitrone Dep. 53:9-11). At some point during the chase, Defendant Trooper Brett Coomes took over leading the pursuit that traversed several major thoroughfares and proceeded through two-lane streets in residential areas.

Coitrone testified that he did not initially stop because there were orange cones with pedestrians along the right side of the road, but also claims that he waved to the officer to indicate that he intended to stop. (Coitrone Dep. 53:12-20). When he reached another major thoroughfare, Coitrone maintains that he intended to stop but sped away after hearing screeching or squealing tires because he believed that he was going to be struck from behind. (Coitrone Dep. 54:17-24, 55:10-12, 59:16-17). Coitrone eventually reached a fast-food restaurant, where he pulled between a parking barrier and a tree to drop off McCollum. (Coitrone Dep. 59:17-23). Coitrone testified that he pulled into that area because he was "[s]cared to take an ass whooping. I knew for sure they were gonna whoop me." (Coitrone Dep. 60:25-61:10).

After dropping off McCollum, the chase continued on a two-lane road through a residential area. (Coitrone Dep. 64:5-8, 65:15-20). Coitrone later made a left turn onto another two-lane residential street.[2] (Coitrone Dep. 68:6-18). According to Coomes, Coitrone ran the red light at that intersection, although Coitrone did not specifically recall running that light. (Coomes Dep. 42:6-19; Coitrone Dep. 66:4-5, 68:2-5).

Coitrone then proceeded down the residential street until he encountered Lieutenant John Clark ("Clark"), who was Coomes' supervisor, at the intersection of another major thoroughfare.

---

[1] Tracing the route on Google Maps, the chase covered approximately 6.4 miles.
[2] While traveling down the residential street, Coitrone testified that he was going 55 miles per hour where the speed limit was 30 miles per hour. (Coitrone Dep. 67:11-14). He also acknowledged reaching between 65 and 70 miles per hour at one point during the chase. (Coitrone Dep. 75:1-5).

(Clark Dep. 16:2-10, Aug. 28, 2014, DN 37-4; Coomes Dep. 52:8-15). Clark had parked his cruiser across most of the residential street hoping that Coitrone would stop. (Clark Dep. 16:2-10). As Coitrone approached the cruiser obstructing the roadway, he drove along the edge of the road to circumvent the cruiser and continued across major thoroughfare near a large church. (Coitrone Dep. 71:20-25; Clark Dep. 16:2-20). At that point, Coitrone was weaving in and out of the left lane into oncoming traffic as he was passing vehicles. (Coitrone Dep. 72:12-22, 73:10-12). Coomes had decided that he would terminate the chase once they reached the next cross-street due to the increase in amount of vehicular traffic. (Coomes Dep. 93:25-94:9).

While Coitrone maintains that he let off the throttle as he approached church traffic, Coomes testified that he did not observe Coitrone give any indication that he intended to stop before Coitrone abruptly slowed in front of Coomes. (Coomes Dep. 25:17-23; (Coitrone Dep. 72:2-8). Coomes testified that he attempted to stop after Coitrone suddenly slowed down but was unable to avoid colliding with the motorcycle.[3] (Coomes Dep. 25:6-8). The motorcycle hit a concrete culvert and spun around several times, ejecting Coitrone who also struck the culvert. (Coomes Dep. 25:11-16).

Coitrone later pled guilty to the felonies of wanton endangerment in the first degree (KRS 508.060), and fleeing or evading police in the first degree (KRS 520.095) in Warren Circuit Court.[4] Coitrone filed this lawsuit against Murray, Allen, and Coomes alleging violations of Coitrone's civil rights under 42 U.S.C. § 1983 and asserting pendent state-law tort claims of

---

[3] Coitrone surmises that Coomes was using the precision immobilization technique when Coomes' cruiser struck the back tire of the motorcycle. (Coitrone Dep. 74:1-2). As one court has explained, the precision immobilization technique ("P.I.T.") is "a method of causing a [vehicle] to stop by ramming it not squarely from behind but instead at an angle, causing it to spin and stop." *Wourms v. Fields*, 742 F.3d 756, 758 (7th Cir. 2014) (citation omitted).

[4] *Commonwealth v. Coitrone*, Warren Circuit Court, Ky., Criminal Action No. 12-CR-00589.

negligence, negligence *per se*, battery, and intentional infliction of emotional distress ("IIED").[5] (Compl. ¶¶ 4, 15-25).

## II. JURISDICTION

This Court has subject-matter jurisdiction of alleged violations of civil rights pursuant to 42 U.S.C. § 1983. The Court also has supplemental jurisdiction over Plaintiff's pendent state law claims. *See* 28 U.S.C. § 1367.

## III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of any material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine

---

[5] In his response, Coitrone states that he "does not oppose the dismissal of his claims against Defendants Ricki Allen and Bobby Murray, or his claims of intentional infliction of emotional distress and negligence *per se*." (Pl.'s Resp. to Mot. for Summ. J. 1, DN 41). Accordingly, the Court grants summary judgment on those claims and in favor of those parties.

4

dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. DISCUSSION

### A. Defendants are entitled to summary judgment on Plaintiff's excessive force claim under 42 U.S.C. § 1983.

Coitrone alleges that Coomes violated his civil rights under 42 U.S.C. § 1983 by using excessive force against him in violation of the Fourth Amendment. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons against unreasonable seizures shall not be violated." U.S. Const. amend. IV. As the U.S. Supreme Court has recognized, "[a] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989) (second and third alterations in original) (internal quotation marks omitted)).

In addressing whether Coomes' actions violated the Fourth Amendment, the Court will assume that he intentionally struck Coitrone.[6] In analyzing excessive use of force claims:

---

[6] Under the U.S. Constitution, "a Fourth Amendment seizure occurs as a result of a car collision only where the police officer intended the collision to be the result." *Hernandez v. Jarman*, 340 F.3d 617, 623 (8th Cir. 2003) (citing *Roach v. City of Fredericktown*, 882 F.2d 294, 296 (8th Cir. 1989)). *See also Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989) ("It is clear . . . that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*"); *White v. Tamlyn*, 961 F. Supp. 1047, 1057-58 (E.D. Mich. 1997) ("[I]n order to establish a seizure in the context of high-speed pursuits, *Brower* requires that officers must have intended a collision to occur to terminate the pursuit." (citing *Horta v. Sullivan*, 4 F.3d 2, 10 (1st Cir. 1993))). Coitrone appears to concede

5

> The inquiry in § 1983 actions against a police officer for unlawful or unconstitutional use of force is an objective one based upon the "information possessed" by the police officer involved. It involves what a reasonable police officer would believe to be lawful based upon the information then possessed, not what the officers subjectively may have believed. . . . We view the scene and activity from the perspective, then, of the reasonable police officer at the scene based on reports and information received and what he has observed.

*Boyd*, 215 F.3d at 600-01 (citations omitted). *See also Ali v. City of Louisville*, 395 F. Supp. 2d 527, 534 (W.D. Ky. 2005) ("The 'reasonableness of the officer's belief as to the appropriate level of force should be judged from [the] on-scene perspective' of the officer, not the '20/20 vision of hindsight.'" (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001))); *Estate of Sowards v. City of Trenton*, 125 F. App'x 31, 38-39 (6th Cir. 2005) (noting that courts must "avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992))).

> In determining whether Coomes' use of force was objectively reasonable:

> the court must take into consideration that totality of the circumstances. In applying the objective reasonableness test, the court is required to pay "careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight."

---

that he cannot prove a constitutional violation due to negligent conduct based upon his failure to address this issue in his response. Accordingly, the Court concludes that summary judgment is warranted to the extent that Coitrone is attempting to rely upon negligent conduct to prove his excessive force claim.

*Frodge v. City of Newport*, 501 F. App'x 519, 529 (6th Cir. 2012) (internal citations omitted) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). All of these factors weigh in favor of Coomes' use of force.

With respect to the severity of the crime, there is no question that criminal warrants were outstanding for Coitrone on charges of kidnapping, sodomy, and rape, which are all felonies under Kentucky law.[7] *See* KRS 509.040; 510.040-090. Coitrone's behavior during the chase also constituted a severe crime. During the chase, Coomes observed Coitrone "[s]peeding, reckless[ly] driving, [and] passing on double yellow." (Coomes Dep. 33:11). Coitrone admitted that he exceeded the speed limit by 25 miles per hour and was traveling as fast as 65 to 70 miles per hour, and there is evidence indicating that Coitrone ran at least one red light during the course of the chase. (Coitrone Dep. 75:1-5; Coomes Dep. 42:6-19). Coomes testified that he continued the pursuit because of the outstanding warrants and because he had witnessed Coitrone commit another felony by attempting to elude law enforcement. (Coomes Dep. 27:18-24). Coitrone ultimately pled guilty to felony counts of evading police and wanton endangerment. *See* KRS 508.060(2); KRS 520.095(2). Thus, there is abundant evidence in the record that supports the use of force under the first factor. *See, e.g.*, *McCoy v. Myers*, No. 12-3160-CM, 2015 WL 751936, at *6 (D. Kan. Feb. 23, 2015) (explaining that "the court views crimes such as kidnapping . . . to be severe crimes."); *Blosser v. Gilbert*, 422 F. App'x 453, 458 (6th Cir. 2011) (noting that dangerous driving behavior—including speeding and running red lights—can satisfy the first factor).

Coitrone's actions during the chase also constituted an immediate threat to the officers and others. It is uncontested that Coitrone was racing his motorcycle at high speeds through

---

[7] It is not clear what the nature of the sodomy charge was, though sodomy in the first, second, and third degrees are felonies. *See* KRS 510.070-090.

7

residential areas on a Sunday morning where church was letting out and that he evaded Clark's roadblock. Under these circumstances, there is no question that Coitrone's conduct posed an immediate threat to officers and bystanders. As discussed above, Coitrone pled guilty to fleeing the police and wanton endangerment—both first degree felonies—which reflects the seriousness of the immediate threat that Coitrone posed. Thus, Coitrone's actions satisfy the second factor.

The final factor—whether Coitrone was actively resisting or attempting to evade arrest by flight—is also clearly met. While Coitrone attempts to couch his behavior as compliant at various times throughout the chase, the objective facts speak otherwise. He knowingly sped through residential areas weaving in and out of traffic to avoid law enforcement. The fact that Coitrone may have sought to surrender at the very end does not negate his prior flight and the danger his actions posed to others.

Through his arguments and his expert witness opinions,[8] Coitrone seeks to have this Court do exactly what it must not do: apply 20/20 hindsight to second-guess Coomes' use of force. As the U.S. Supreme Court has instructed, courts must:

> analyze this question from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." [Courts] thus "allo[w] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."

---

[8] While not cited in his response to the motion for summary judgment, Coitrone has retained Dr. R. Paul McCauley ("McCauley") as an expert in this matter. (Pl.'s Expert Report, DN 21-2). In his report, McCauley opines that "[c]onsidering the totality of the circumstances including that Trp. Coomes did not know nature of Mr. Coitrone's felony warrants and did not see him commit any crimes other than his driving, the application of a P.I.T. was unreasonable, unnecessary, and excessive force." (Pl.'s Expert Report 9). This opinion, however, is inconsistent with Coomes' testimony that he was in dispatch before the chase when Mayfield ran the license plate and heard the specific nature of the outstanding warrants. (Coomes Dep. 35:12-36:1). Thus, this opinion is not supported by the evidence in the record.

*Plumoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (quoting *Graham*, 490 U.S. at 396-97) (citation omitted) (second alteration in original). Consideration of the relevant factors discussed above compels the conclusion that Coomes' actions were objectively reasonable and the use of force satisfied the requirements of the Fourth Amendment.

In opposing the motion, Coitrone largely focuses on whether Coomes' conduct may have violated any KSP policy relating to the use of the P.I.T. or what Coitrone refers to as four-second rule relating to distance between vehicles.[9] Even if Coitrone is correct that Coomes violated a policy, a policy violation is not determinative of whether Coomes used excessive force. "It is, in fact, settled law that a violation of a departmental policy does not equate with constitutional unreasonableness." *Abney*, 493 F.3d at 419 (*Davis v. Scherer*, 468 U.S. 183, 193-96 (1984)). Similarly, whether Coomes had permission to use the P.I.T. against Coitrone is not relevant in determining the constitutional inquiry. *See Scott*, 127 S. Ct. at 1773 n.1 ("It is irrelevant to our analysis whether Scott had permission to take the precise actions he took."). Thus, this argument lacks merit.

The parties have focused on the Sixth Circuit's decision in *Walker v. Davis*, 649 F.3d 502 (6th Cir. 2011), as instructive on the issue of excessive force. In *Walker*, a policer officer clocked a motorcycle traveling 70 miles per hour in a 55 miles per hour zone after midnight in a rural Kentucky area. *See Walker*, 649 F.3d at 503. The officer initially gave chase and was later joined by a sheriff's deputy. *See id.* "The entire pursuit lasted about five minutes and took place on empty stretches of highway. [The motorcycle] never went above 60 miles per hour during the chase itself. He ran one red light." *Id.* The motorcycle then left the roadway and cut through a muddy field. *See id.* While traversing the field, the deputy struck the back of the motorcycle

---

[9] Coitrone's expert witness report contains various opinions about Coomes' purported violations of KSP policy. (Pl.'s Expert Report 6-8).

9

with his cruiser causing the motorcyclist to be thrown from his vehicle and drug underneath the cruiser to his death. *See id.*

The motorcyclist's estate filed suit alleging that the deputy used excessive force in violation of the Fourth Amendment. *See id.* After the trial court denied the deputy's motion for summary judgment based upon qualified immunity, the deputy appealed. *See id.* In affirming the denial of qualified immunity, the Sixth Circuit noted:

> [The motorcyclist] posed no immediate threat to anyone as he rode his motorcycle across an empty field in the middle of the night in rural Kentucky. That fact, among others, renders this case patently distinguishable from *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), in which Harris had led the police on a "Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." *Id.* at 380, 127 S. Ct. 1769. The chase here was a sleeper by comparison.

*Id.* at 503.

The holding in *Abney v. Coe*, 493 F.3d 412 (4th Cir. 2007), is more instructive and analogous to the facts of the present case. In *Abney*, a deputy sheriff attempted to initiate a traffic stop after observing a motorcycle cross the centerline while passing another vehicle on a curve and the deputy attempted to initiate a traffic stop. *See id.* at 414. The motorcycle refused to stop and continued to flee from the deputy sheriff while running other motorists off the road and crossing into lanes of oncoming traffic. *See id.* The deputy's cruiser and the motorcycle came into contact with each other at one point during chase, causing the motorcycle to leave the roadway. *See id.* The motorcycle then navigated back to the road and sped off. *See id.*

As the chase continued, the motorcyclist continued to put other motorists in danger and disregarded lane markings and a stop sign. *See id.* During the last portion of the chase, neither the motorcycle nor the cruiser exceeded the posted 55 mile-per-hour speed limit. *See id.* Eventually, the deputy sheriff struck the motorcycle for a second time causing the motorcycle to

leave the road and strike an embankment before being run over by the deputy's cruiser. *See id.* The motorcyclist died from his injuries at the scene. *See id.*

The motorcyclist's estate filed suit alleging, *inter alia*, the use of excessive force by the deputy. The trial court denied summary judgment based upon qualified immunity, and the deputy appealed. *See id.* at 415. On appeal, the Fourth Circuit reversed the order and directed the entry of an order granting summary judgment for the deputy. *See id.* at 421.

In its review, the Fourth Circuit first considered whether the deputy's conduct violated any constitutional right—i.e., whether he satisfied the Fourth Amendment's objective reasonableness standard by viewing the conduct "from the perspective of the officer on the scene, not through the more leisurely lens of hindsight." *See id.* at 415, 416 (citations omitted). The Fourth Circuit noted that "[a]n officer's actions are reasonable when 'preventing possible harm to the innocent justifies exposing to possible harm the person threatening them.'" *Id.* at 416 (quoting *Scott*, 127 S. Ct. at 1778 n.10). For the purpose of analyzing the applicability of qualified immunity, the court assumed that the deputy's actions were intentional even though he denied it. *See id.*

The Fourth Circuit considered the length of the chase and the motorcyclist's reckless behavior in concluding that the behavior posed a "substantial risk of serious harm" to other motorists. *Id.* at 417. Noting that the U.S. Supreme Court had held that the precision immobilization technique could be used to stop a fleeing car, the *Abney* court stated:

> [The Supreme Court] had "little difficulty in concluding it was reasonable for Scott to take the action that he did," and "la[id] down [the] sensible rule" that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death."

11

*Id.* (internal citation omitted) (second, third, and fourth alterations in original) (quoting *Scott*, 127 S. Ct. at 1779). The Fourth Circuit stated that the Abney's conduct was similar to the facts in *Scott* and noted, "the fact that Abney was driving a motorcycle, rather than a car, does not require a different result since the probability that a motorist will be harmed by a Precision Intervention Technique is high in either circumstance." *Id.* at 417, 418 (citing *Scott*, 127 S. Ct. at 1778).

The Fourth Circuit also rejected the argument that the deputy's actions were unjustified because the deputy could have allowed the motorcycle to get away. *See id.* at 418. Rejecting the notion that the deputy should have permitted Abney to flee, the court stated:

> As *Scott* made clear, an officer's decision whether to let a suspect go in the hopes of catching him later is not governed by just how dangerous the suspect can make the pursuit. To require an officer to end a chase whenever the suspect creates a sufficiently great risk to others is but an invitation to rash conduct. There is, of course, no Fourth Amendment right to "impunity-earned-by-recklessness."

*Id.* at 419 (citations omitted). Even assuming the use of the P.I.T. was in violation of department policy, the court held that would be insufficient to prove a constitutional violation. *See id.*

The facts of the present case are significantly different than *Walker* and are much more aligned with *Abney*. Unlike the motorcyclist in *Walker* who was struck in a rural field where no bystanders were in harm's way, Coitrone was speeding—exceeding the posted speed limit by as much as 25 miles per hour and reaching speeds of up to 65 to 70 miles per hour—crossing double yellow lines and running a red light while traveling through residential streets until he reached an area where a church service had ended and worshipers were exiting. Coitrone disregarded a stop light and entered oncoming traffic as he attempted to flee from Coomes. Taken as a whole, Coitrone posed a serious risk of harm to innocent bystanders, which is a far different setting than the motorcyclist in *Walker*.

12

For these reasons, Coomes' use of force was reasonable and did not violate the Fourth Amendment. Accordingly, the Court grants summary judgment for Coomes on the use of force claim.

### B. Plaintiff's excessive force claim against Coomes is also barred by qualified immunity.

Coomes also maintains that Coitrone's excessive force claim would be barred by qualified immunity. Coitrone does not even address this defense in his response.[10] Regardless, the Court will address the applicability of qualified immunity.

As one court has explained the nature of the qualified immunity defense as follows:

> "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." . . .
> "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" . . . [I]dentical "precedent is not required for qualified immunity purposes."

*Foster v. City of Georgetown*, No. 05-467-JBC, 2007 WL 1385937, at *7 (E.D. Ky. May 7, 2007) (citation omitted). "The plaintiff has the burden to 'show that the defendant is not entitled' to qualified immunity." *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005) (citation omitted).

As the Sixth Circuit has instructed in analyzing the applicability of qualified immunity:

> The first step in a qualified immunity analysis is to ask whether the public official's conduct violated a constitutional right. If a constitutional right was violated, the second step is to ask whether the right was clearly established at the time of the violation, such that "a reasonable officer confronted with the same situation would have known that using [] force would violate that right."

---

[10] Because Coitrone never addressed qualified immunity, he has conceded that qualified immunity bars his excessive force claim. *See* Clark v. City of Dublin, 178 F. App'x 522, 524-25 (6th Cir. 2006) (holding that a respondent's failure to respond properly to arguments raised in a motion for summary judgment constitutes abandonment of a claim).

*Pollard v. City of Columbus*, 780 F.3d 395, 402 (6th Cir. 2015) (citations omitted). The Supreme Court has held that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

As discussed above, no constitutional violation occurred in this instance, which bar Coitrone's claim due to qualified immunity. Even if such a violation had been proven, Coitrone could still not overcome Coomes' qualified immunity. Under the second prong, "the court must determine 'whether the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate what [the officer] allegedly did was objectively unreasonable in light of [the] clearly established constitutional rights.'" *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996) (alterations in original) (citation omitted). "[T]he Supreme Court's standard of reasonableness is comparatively generous to the police in cases where potential danger, emergency conditions or other exigent circumstances are present." *Berube v. Conley*, 506 F.3d 79, 83 (1st Cir. 2007) (internal quotation marks omitted) (citation omitted).

Considering the reasonableness requirement in context of the present case, the evidence does not reflect that Coomes acted unreasonably. As the Sixth Circuit has explained:

> No doubt the use of deadly force by police officers is a serious matter and ought to be avoided—but not at all costs and not in all situations. The question is why and to what end the police deployed the force. Two cases capture the point, one finding a Fourth Amendment violation, one not. *Tennessee v. Garner,* 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), considered whether an officer could prevent an unarmed felon's escape by shooting him. In holding that he could not, the Court applied the Fourth Amendment reasonableness test to find that deadly "force may not be used unless it is necessary to prevent the escape [of an apparently unarmed suspected felon] and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 3, 105 S. Ct. 1694. *Scott v. Harris*, 550 U.S. 372, 383-86, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), followed this path. It

applied the same Fourth Amendment reasonableness standard to grant relief to a police officer who had ended a high-speed chase by running the suspect's vehicle off the road.

*Hocker*, 738 F.3d at 154. "If there is a per se rule in this area, it is that the 'totality of the circumstances' governs every case." *Hocker v. Pikeville City Police Dep't*, 738 F.3d 150, 156 (6th Cir. 2013) (quoting *Tennessee v. Garner,* 471 U.S. 1, 8-9 (1985)).

As outlined in great detail in addressing the merits of the excessive force claim, Coitrone's conduct in fleeing and attempting to evade officers posed a significant threat of death or serious injury. It is in that context of this case that Coomes' conduct must be measured.

While the general proposition that excessive force is prohibited by the Fourth Amendment was clearly established, it was not clearly established that Coomes' conduct violated Coitrone's rights in the specific context of this case. With respect to the "clearly established" requirement, the Sixth Circuit has explained:

> The "clearly established" inquiry, it is vital to note, "must be undertaken *in light of the specific context of the case,* not as a broad general proposition . . . ." That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Eggleston v. Short*, 560 F. App'x 561, 563 (6th Cir. 2014) (alterations in original) (citations omitted).

In *Scott*, the U.S. Supreme Court held that a police officer did not violate the Fourth Amendment when he ran the suspect's vehicle off of the road. *See Scott*, 550 U.S. 383-86. Similarly, the Fourth Circuit in *Abney*, also relying on *Scott*, concluded that the use of force in striking the fleeing motorcycle with a cruiser did not violate the Fourth Amendment. *See Abney*, 493 F.3d at 417. *See also Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992) (holding that an officer's use of deadly force to shoot a driver was reasonable even though the officer was

15

never in immediate danger and the use of force may have violated department policy). Based upon these cases, Coitrone has also failed to prove the clearly established requirement.

For these reasons, Coitrone has failed to establish that Coomes was not entitled to the defense of qualified immunity. Accordingly, the Court will grant summary judgment for Coomes on this alternative basis.

### C. Coitrone's state law claims do not survive summary judgment.

Based upon the parties' briefing of the motion for summary judgment, the only remaining state-law claims against Coomes are the common law torts of negligence and battery. As outlined below, summary judgment is warranted on both of those claims.

#### 1. *Negligence*

While not addressed by the parties, Coitrone cannot state a negligence claim in light of his battery claim. As this Court has stated:

> An officer is privileged to use the amount of force that he reasonably believes is necessary to overcome resistance to his lawful authority, but no more. When he deliberately exceeds the privileged amount of force by committing an unwarranted violence on the arrestee, he is liable for the tort of battery, not for negligence. "There is no such thing as a negligent battery." That an officer may have mistakenly believed he needed to use the amount of force he did does not change the fact that his initial action was intentional, nor does it alter the objective analysis of whether the force he used was excessive. . . . To permit a separate claim for negligence premised on the same conduct by the officer is logically and doctrinally unsupportable. . . . [T]his Court and other federal courts faced with concurrent claims for excessive force/battery and for negligence have reached the same conclusion.

*Turner v. Hill*, No. 5:12-CV-00195-TBR, 2014 WL 549462, at *10 (W.D. Ky. Feb. 11, 2014) (citations omitted). Thus, to the extent that Coitrone is arguing that Coomes used more force against Plaintiff than permitted by law, Coitrone's negligence claim is not viable because an "officer is liable for the intentional tort of battery, not negligence, when he deliberately exceeds the privileged amount of force by committing an unwarranted violence on the arrestee." *Ali v.*

16

*City of Louisville*, No. 3:05CV-427-R, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006) (citation omitted).

Even if the Court were to consider the merits of Coitrone's negligence claim, summary judgment is warranted. Under Kentucky law, the elements of a claim of negligence are: (1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992) (citing *Ill. Centr. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967)).

Defendants maintain that Coomes owed no duty to Coitrone. That argument is consistent with this Court's decision in *Walker* in which it dismissed the negligence claim asserted against the deputy sheriff:

> To be sure, under the Court's analysis of official immunity, a pursuing police officer would owe a duty of care to *innocent* third parties on the roadway. A pursuing officer would not be entitled to official immunity for his negligent driving under those circumstances. However, courts from other jurisdictions that have addressed the question, have found that police officers do not owe such a duty to fleeing suspects. *See, e.g., Lindstrom v. City of Corry*, 563 Pa. 579, 763 A.2d 394 (2000) (no duty of care to fleeing driver); *Jackson v. Oliver*, 204 Mich. App. 122, 514 N.W.2d 195 (1994) (same); *Bryant v. Beary,* 766 So.2d 1157 (Fla. Dist. Ct. App. 2000) (same); 60A C.J.S. *Motor Vehicles* § 763 ("A police officer owes no common law duty of care to a fleeing driver.") (citations omitted).

*Walker v. Davis*, 643 F. Supp. 2d 921, 933 n.10 (W.D. Ky. 2009). While Coitrone relies upon a slippery-slope argument in asserting that he has a viable negligence claim, he has cited no authority to support this argument. Consistent with this Court's holding in *Walker*, Coomes did not owe a duty to Coitrone who was evading law enforcement, and summary judgment is warranted on this claim.

### 2. *Battery*

Defendants also seek summary judgment on the battery claim, which is defined as "any unlawful touching of a person of another, either by the aggressor himself, or by any substance set

17

in motion by him." *Sigler v. Ralph*, 417 S.W.2d 239, 241 (Ky. 1967) (citation omitted). The touching must be "harmful or offensive." *Noble v. Louisville Taxicab & Transfer Co.*, 255 S.W.2d 493, 495 (Ky. 1953) (citation omitted). In arguing for summary judgment on this claim, Defendants argue that:

> [A] police officer is only liable for assault and battery if he lacked reasonable grounds for an arrest of a suspect. In such an action, "the focus is on whether the police officer had reasonable grounds to believe and did believe in good faith that the plaintiff had committed an arrestable offense . . . ."

(Defs.' Mem. in Supp. of Mot. for Summ. J. 28 (quoting *Dunn v. Felty*, No. 2004-CA-001029-MR, 2005 WL 736596, at *2 (Ky. App. Apr. 1, 2005), *aff'd*, 226 S.W.3d 68 (Ky. 2007))).

In the determining whether to dismiss this claim, the Court must consider whether Coomes had had reasonable grounds to believe and did believe in good faith that Coitrone had committed an arrestable offense and whether Coomes used excessive force in making the arrest. *See City of Lexington v. Gray*, 499 S.W.2d 72, 75 (Ky. 1972); *Lexington-Fayette Urban Cnty. Gov't v. Middleton*, 555 S.W.2d 613, 619 (Ky. App. 1977). As discussed above, Coomes use of force followed Coitrone's flight from police and wanton endangerment—felonies to which Coitrone has pled guilty. Because Coomes had reasonable grounds and a good faith basis to believe that Coitrone had committed arrestable offenses, Coomes is entitled to summary judgment on the battery claim.

### D. The parties' motions in limine are moot as a result of the Court's ruling on the motion for summary judgment.

The parties have moved to exclude each other's expert witnesses. (Pl.'s Mot. in Limine, DN 34; Defs.' Mot. in Limine, DN 36). In light of the Court's ruling on the motion for summary judgment, it is necessary to rule on the motions in limine. Accordingly, the Court will deny those motions as moot.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (DN 37) is **GRANTED**, and that the parties' Motions in Limine (DN 34, 36) are **DENIED AS MOOT**.

Greg N. Stivers, Judge
United States District Court

May 19, 2015

cc: counsel of record